UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA DIVISION

| | |
|---|---|
| WESTFIELD INSURANCE COMPANY, <br><br> PLAINTIFF <br><br> VS. <br><br> HUDSON CONSTRUCTION COMPANY, <br><br> DEFENDANT <br><br> SERVE: CT CORPORATION SYSTEM <br> 300 MONTVUE RD. <br> KNOXVILLE TN 37919-5546 | CASE NO. 1: -CV- - <br><br> JURY DEMAND |

## COMPLAINT FOR DECLARATORY JUDGMENT

The Plaintiff, Westfield Insurance Company, by counsel, and for its Complaint for Declaratory Judgment against the Defendant, Hudson Construction Company, states as follows:

**PARTIES, VENUE, AND JURISDICTION**

1. In accordance with Fed. R. Civ. P. 57 and 28 U.S.C. § 2201-2202, this Court has the power and authority to grant or issue judgments for declaratory relief in cases over which it has jurisdiction, for which the Court deems declaratory relief to be appropriate.

2. Plaintiff, Westfield Insurance Company, is a corporation formed in the state of Ohio, with its principal place of business in the state of Ohio, which is authorized to do, and does, transact business within the State of Tennessee, the state where the relevant insurance policy was issued. Westfield is deemed a citizen of Ohio for jurisdictional purposes.

3. Defendant, Hudson Construction Company ("Hudson"), is a Tennessee corporation with a principal place of business in Chattanooga, Tennessee. It is deemed a citizen of Tennessee for jurisdictional purposes.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between the Plaintiff and the Defendant, and the amount in controversy exceeds the sum of $75,000.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

6. This Court may exercise personal jurisdiction over the Defendant.

7. An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties.

**FACTS**

8. Westfield re-alleges, re-avers, reiterates and incorporates by reference as if set forth fully herein, each and every preceding paragraph of this Complaint for Declaratory Judgment.

9. On or about October 21, 2024, Hudson filed a lawsuit in the District Court of Harris County, Texas, styled *Hudson Construction Company v. TXZNH, LLC, Urban Partnerships Community Development Corporation, AHG Properties LLC, and TXZNH GP, LLC*, Cause No. 2024-73212 (hereinafter the "Underlying Litigation"). The Underlying Litigation relates to the development and construction of a 325-unit multifamily housing project in Houston, Texas, known as Summit at Renaissance Park (the "Project").

10. On or about March 28, 2025, TXZNH, LLC, the owner of the Project, filed counterclaims against Hudson and Berkley Insurance Company in the Underlying Litigation (hereinafter the "Counterclaim").

2

11. The Counterclaim asserts that TXZNH has a Prime Contract with Urban Partnerships Development Corporation ("Urban Partnership") for the development of the Project. In turn, it alleges that Urban Partnerships has a Prime Subcontract with Hudson, wherein Hudson assumed responsibility for the day-to-day construction of the Project and all obligations of the Prime Contract. A copy of the Counterclaim is attached hereto as **Exhibit A**.

12. Count 1 of the Counterclaim is for breach of contract. TXZNH alleges that it is a third-party beneficiary to the valid and enforceable Prime Subcontract between Urban Partnership and Hudson.

13. TXZNH alleges that Hudson breached the Prime Subcontract in numerous ways, including failing to complete the Project by the agreed upon deadline, misappropriating construction funds, failing to adhere to financial reporting requirements, failing to keep the Project clear and free of all lien claims, and by performing defective work.

14. Count 2 of the Counterclaim is for negligence. TXZNH alleges that Hudson breached its duty to construct and manage the Project as a reasonable and prudent contractor and in accordance with industry standards and the applicable standard of care. The Counterclaim asserts that Hudson breached these duties by failing to construct the Project free of defects; failing to construct the Project in accordance with the Project plans and design criteria; failing to keep the Project site free of water intrusion; failing to properly staff the Project and/or manage its employees; approving of, and paying for, work that had not been performed and/or was defectively performed by Hudson's sub-subcontractors; failing to monitor its sub-subcontractors and account for Project materials; ignoring Project requirements; and negligently approving hours for employees who were not on the Project.

15. Count 3 of the Counterclaim is for claims against the performance bond. TXZNH alleges that Hudson was the principal and Berkley was the surety of a performance bond. TXZNH claims that Hudson and/or Berkley breached their obligations under the performance bond by failing and refusing to commence and complete the performance of the obligations of Hudson under the Subcontract.

16. Count 4 of the Counterclaim is for the removal of a Fraudulent Lien under Texas Property Code § 53.160 and Chapter 12 of the Texas Civil Practice & Remedies Code. TXZNH alleges that Hudson's lien is invalid, unenforceable, and fraudulent. It further alleges that Hudson filed the lien with knowledge that it was a fraudulent lien against real property, with the intent that the lien be given the same legal effect as a valid lien, and with the intent to cause TXZNH financial injury.

17. Count 5 of the Counterclaim is for violation of the Texas Construction Trust Fund Act. TXZNH alleges that Hudson, as trustee, received payments under the construction contract for the benefit of its sub-subcontractors and/or suppliers on the Project. It is further alleged that Hudson violated the Texas Trust Fund Act by intentionally or knowingly or with intent to defraud, directly or indirectly retained, used, disbursed, or otherwise diverted the trust funds without first fully paying all current or past due obligations incurred by Hudson to the beneficiaries of the trust funds, its sub-subcontractors, and/or suppliers.

18. Count 6 of the Counterclaim is a claim to recover attorney fees.

19. TXZNH seeks "[a]t least $29,920,023.30 in economic damages," as well as an order denying the validity of Hudson's lien.

20. Westfield issued a Commercial Package policy to Hudson Construction Company, policy no. 5 194 401, with effective policy periods of April 29, 2021-April 29, 2022; April 29,

4

2022-April 29, 2023; and April 29, 2023-April 29, 2024, which contained Commercial General Liability (hereinafter "CGL") coverage and Commercial Liability Umbrella (hereinafter "Umbrella") Coverage. A certified copy of the policy for policy year 2021-2022 is attached hereto as **Exhibit B.** A certified copy of the policy for policy year 2022-2023 is attached hereto as **Exhibit C.** A certified copy of the policy for policy year 2023-2024 is attached hereto as **Exhibit D.**

21. An actual controversy exists because Hudson has sought indemnity and a defense under the Westfield policy for the damages sought by TXZNH in the Underlying Litigation.

## **COUNT I**

22. Westfield re-alleges, re-avers, reiterates, and incorporates by reference as if set forth fully herein, each and every averment contained within the preceding paragraphs of this Complaint for Declaratory Judgment.

23. Subject to exclusions, conditions, definitions, and other policy provisions, the CGL coverage of Westfield's policy affords coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies[,]" provided that the "bodily injury" or "property damage" "is caused by an 'occurrence[.]'"

24. The CGL coverage form of Westfield's policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

25. The CGL coverage form of Westfield's policy defines "property damage" as follows:

5

"Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

26. The CGL coverage form of Westfield's policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

27. An endorsement amends the definition of "occurrence" as it appears in the CGL coverage form as follows:

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. Damages to "your work", as a result of faulty workmanship, are not considered an occurrence unless the work was performed on your behalf by a subcontractor. However, damages including "bodily injury", or "property damage" to property other than "your work", as a result of faulty workmanship, shall be deemed to be an "occurrence", but only if:

a. The "bodily injury" or "property damage" is the result of work performed by you or on your behalf by a subcontractor(s);

b. The work performed by you or on your behalf by a subcontractor(s) is within the "products-completed operations hazard"; and

c. The "bodily injury" or "property damage" is unexpected or unintended from the standpoint of the insured.

This endorsement applies to the named insured and no other party.

28. The claims asserted by TXZNH in the Underlying Litigation are not claims of "bodily injury" or "property damage" caused by an "occurrence," and, therefore, there is no coverage for those claims under the CGL coverage of Westfield's policy.

## COUNT II

29. Westfield re-alleges, re-avers, reiterates, and incorporates by reference as if set forth fully herein, each and every averment contained within the preceding paragraphs of this Complaint for Declaratory Judgment.

30. Subject to exclusions, conditions, definitions, and other policy provisions, the Umbrella coverage of Westfield's policy affords coverage for "the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' …" which was "caused by an 'occurrence[.];"

31. The Umbrella coverage of Westfield's policy defines "bodily injury" as "bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time. 'Bodily injury' includes mental anguish or other mental injury resulting from 'bodily injury'."

32. The Umbrella coverage of Westfield's policy defines "property damage" as follows:

"Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

With respect to the ownership, maintenance or use of "covered autos", property damage also includes "pollution cost or expense", but only to the extent that

coverage exists under the "underlying insurance" or would have existed but for the exhaustion of the underlying limits.

For the purposes of this insurance, with respect to other than the ownership maintenance or use of "covered autos", electronic data is not tangible property. As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

33. The Umbrella coverage of Westfield's policy defines "occurrence" as: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

34. An endorsement amends the definition of "occurrence" as it appears in the Umbrella coverage form as follows:

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. Damages to "your work", as a result of faulty workmanship, are not considered an occurrence unless the work was performed on your behalf by a subcontractor. However, damages including "bodily injury", or "property damage" to property other than "your work", as a result of faulty workmanship, shall be deemed to be an "occurrence", but only if:

a. The "bodily injury" or "property damage" is the result of work performed by you or on your behalf by a subcontractor(s);

b. The work performed by you or on your behalf by a subcontractor(s) is within the "products-completed operations hazard"; and

c. The "bodily injury" or "property damage" is unexpected or unintended from the standpoint of the insured.

This endorsement applies to the named insured and no other' party.

35. The claims asserted by TXZNH in the Underlying Litigation are not claims of "bodily injury" or "property damage" caused by an "occurrence," and, therefore, there is no coverage for those claims under the Umbrella coverage of Westfield's policy.

## COUNT III

36. Westfield re-alleges, re-avers, reiterates, and incorporates by reference as if set forth fully herein, each and every averment contained within the preceding paragraphs of this Complaint for Declaratory Judgment.

37. The CGL coverage and the Umbrella coverage of Westfield's policy exclude coverage for "'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured."

38. To the extent the claims of TXZNH are for "property damage" which was "expected or intended from the standpoint of the insured[,]" such claims are excluded from coverage by Westfield's policy.

## COUNT IV

39. Westfield re-alleges, re-avers, reiterates, and incorporates by reference as if set forth fully herein, each and every averment contained within the preceding paragraphs of this Complaint for Declaratory Judgment.

40. The CGL coverage and the Umbrella coverage of Westfield's policy excludes coverage for "property damage" to "[t]hat particular part of any real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations" and "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."

41. The CGL form and the Umbrella coverage form of Westfield's policy define "your work" as follows:

"Your work":

    a. Means:

        (1) Work or operations performed by you or on your behalf; and

        (2) Materials, parts or equipment furnished in connection with such work or operations.

    b. Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        (2) The providing of or failure to provide warnings or instructions.

42. To the extent the claims in the Underlying Litigation are for "property damage" to "[t]hat particular part of any real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations" or "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it[,]" such claims are excluded from coverage by Westfield's policy.

## COUNT V

43. Westfield re-alleges, re-avers, reiterates, and incorporates by reference as if set forth fully herein, each and every averment contained within the preceding paragraphs of this Complaint for Declaratory Judgment.

44. The CGL coverage form and the Umbrella coverage form of Westfield's policy contain the following exclusion:

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

45. The CGL coverage form and the Umbrella coverage form of Westfield's policy define "impaired property" as follows:

"Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

46. To the extent the claims in the Underlying Litigation are for "property damage" to "impaired property" or "property that has not been physically injured, arising out of a "defect, deficiency, inadequacy in 'your product' or 'your work'" or a "delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms[,]" such claims are excluded from coverage by Westfield's policy.

## **COUNT VI**

47. Westfield re-alleges, re-avers, reiterates, and incorporates by reference as if set forth fully herein, each and every averment contained within the preceding paragraphs of this Complaint for Declaratory Judgment.

48. Westfield reserves the right to deny any and/or all claims that have been made, or which may be made in the future, by the Defendant in this action and/or parties to the Underlying Litigation if Westfield later determines that said claims can be denied under any provision of the applicable insurance

11

policy, including, but not limited to the terms, conditions, exclusions, and/or other policy provisions not specifically set forth herein.

49. Westfield specifically reserves the right to assert any term, condition, exclusion, and/or other provision of any insurance policy issued to Hudson Construction Company, as it may be applicable to any claim arising out of the facts of this litigation by any individual and/or entity.

WHEREFORE, the Plaintiff, Westfield Insurance Company, prays the Court as follows:

1. For entry of a Declaratory Judgment from this Court, declaring that the Plaintiff, Westfield Insurance Company, has no duty to defend or indemnify Hudson Construction Company for any damages sought in the Underlying Litigation;

2. For an award of its costs sustained herein, including reasonable attorneys' fees (if applicable);

3. For a trial of this cause by Jury; and,

4. For any and all other just and proper relief to which this Court may deem it is entitled.

Respectfully submitted,

RICHARDSON LAW GROUP, PLLC

*/s/ Elizabeth M. Bass*
Elizabeth M. Bass (TN BPR 035570/ KBA 92461)
700 East Main Street, Suite 201
Hendersonville, Tennessee 37075
Telephone: (615) 919-9090
Facsimile: (859) 219-9292
Email: Elizabeth@RichardsonLawGrp.com
COUNSEL FOR PLAINTIFF,
WESTIFILED INSURANCE COMPANY