UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| WESTFIELD INSURANCE COMPANY, | ) | |
|---|---|---|
| *Plaintiff*, | ) | Case No. 1:25-cv-184 |
| v. | ) | Judge Atchley |
| | ) | Magistrate Judge Steger |
| HUDSON CONSTRUCTION COMPANY, | ) | |
| *Defendant*. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Hudson Construction Company's Motion to Dismiss or, In the Alternative, to Stay or Administratively Close the Case Pending the Underlying Litigation [Doc. 17], asking the Court to exercise its discretion to decline jurisdiction over this declaratory judgment action or, in the alternative, stay this case pending the resolution of the litigation this matter arises out of. For the following reasons, the Court will **GRANT** Hudson's Motion [Doc. 17] and discretionarily decline to exercise jurisdiction over this action.

### I. BACKGROUND

This dispute arises from three consecutive insurance policies (the "Policy") issued by Plaintiff Westfield Insurance Company to Hudson, which provided both Commercial General Liability coverage and Commercial Liability Umbrella coverage. [Doc. 1 at ¶ 20]. After obtaining the Policy, Hudson entered into a prime subcontract with Urban Partnerships Development Corporation ("Urban Partnership"), wherein it assumed responsibility for the day-to-day construction for a 325-unit multifamily housing project in Houston, Texas. [*Id.* at ¶¶ 9–11]. As construction progressed on the project, disputes emerged, ultimately giving rise to litigation. [*Id.*].

On October 21, 2024, Hudson filed a lawsuit in Texas state court against Urban Partnership

and various other entities involved in the project (the "Underlying Litigation").[1] [*Id.* at ¶¶ 9–11]. Subsequently, TXZNH, LLC, one of the defendants in the Underlying Litigation and owner of the construction project, filed counterclaims against Hudson, alleging, among other things, breach of contract and negligence arising from Hudson's work on the project. [*Id.* at ¶¶ 10–19].

In response to the Underlying Litigation and the counterclaims against it, Hudson sought indemnity and a defense under the Policy. [*Id.* at ¶ 21]. Westfield agreed to defend Hudson in the Underlying Litigation under a reservation of rights and later filed the instant action seeking a declaration that it was not obligated to defend or indemnify Hudson under the Policy. [Doc. 1; Doc. 20 at 2]. Now, Hudson seeks to dismiss, or alternatively stay or administratively close, this action. [Doc. 17]. Westfield has responded in opposition to the Motion, [Doc. 20], and Hudson has replied, [Doc. 21]. Having reviewed the record and the parties' briefing, the Court is now prepared to rule.

## II. ANALYSIS

Pursuant to the Policy, Westfield agreed to defend and indemnify Hudson against all sums that Hudson becomes legally obligated to pay as damages because of, among other things, "property damage," subject to the terms, conditions, and exclusions of the Policy. [Doc. 1 at ¶¶ 22–49]. Ultimately, the gravamen of this instant action hinges on whether the counterclaims filed in the Underlying Litigation assert claims that implicate "property damage," as defined under the Policy. If they do, as Hudson contends, Westfield is obligated to defend and indemnify Hudson. But, if they do not, as Westfield argues, Westfield is under no obligation to defend or indemnify Hudson. As such, Westfield has brought this declaratory judgment action ("DJA") pursuant to the

---

[1] Hudson filed the lawsuit in the District Court of Harris County, Texas, styled as *Hudson Construction Company v. TXZNH, LLC, Urban Partnerships Community Development Corporation, AHG Properties LLC, and TXZNH GP, LLC*, Cause No. 2024-73212.

Declaratory Judgment Act, 28 U.S.C. § 2201, asking this Court for a declaration that the Underlying Litigation does not implicate "property damage," as defined under the Policy, and, therefore, Westfield has no duty to defend or indemnify Hudson. [Doc. 1].

"The Declaratory Judgment Act provides that a district court '*may* declare the rights and other legal relations of any interested party seeking such declaration…'." *Travelers Indem. Co. v. Bowling Green Professional Associates, PLC*, 495 F.3d 266, 271 (6th Cir. 2007) (citing 28 U.S.C. §2201(a) (emphasis added)). The "Act gives district courts 'unique and substantial discretion in deciding whether to declare the rights of litigants.'" *American Guarantee and Liability Insurance Co. v. Norfolk Southern Railway Co.*, 278 F. Supp. 3d 1025, 1035 (E.D. Tenn. 2017) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995)). The Sixth Circuit, however, has "cautioned district courts not to jump into the middle of ongoing litigation," noting that "declaratory judgment actions seeking an advance opinion of indemnity issues are seldom helpful in resolving an ongoing action in another court." *Emps. Mut. Cas. Co. v. Clifford*, No. 5:23-271-KKC, 2024 U.S. Dist. LEXIS 87474, at *4 (E.D. Kent. May 15, 2024) (quoting *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004)).

In the Sixth Circuit, district courts consider the five *Grand Trunk* factors when determining whether to exercise jurisdiction under a DJA. These factors are: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used for procedural fencing or to provide an arena for a race to res judicata; (4) whether the use of declaratory action would increase friction between state and federal courts or improperly encroach on state jurisdiction; and (5) whether there is a better or more effective alternative remedy. *Travelers Indem. Co.*, 495 F.3d at 271.

Hudson argues that dismissal of this action is appropriate because the facts and circumstances here do not warrant an exercise of discretionary jurisdiction when analyzed under the *Grand Trunk* factors. [Doc. 18 at 6–11]. Westfield disagrees, believing that, on balance, the factors support an exercise of jurisdiction. [Doc. 20 at 5–13]. The Court will now analyze each factor in turn.

### A. Factors One and Two: Will the Declaratory Action Settle the Controversy and Clarify the Legal Relations?

The first two *Grand Trunk* factors are generally considered collectively since a declaratory judgment that settles the controversy will almost certainly clarify the legal relations at issue. *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 397 (6th Cir. 2019). However, district courts within this circuit have recognized "a split in Sixth Circuit decisions regarding these [first two] factors." *Philadelphia Indemnity Insurance Company v. Priority Pes Control, LLC*, 398 F. Supp. 3d 280, 283 (M.D. Tenn. 2019). One line of cases has held that the proper inquiry is whether the declaratory judgment action will settle the immediate controversy. *Id.* The other line of cases concluded that the appropriate question is whether the declaratory action will settle the "ultimate, underlying state-court controversy, not just the immediate controversy…before the district court." *Id.* Ultimately, the difference in these cases appears to turn on competing policy considerations and whether the discrete controversy before the court involves factual disputes at the heart of the underlying litigation. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555 (6th Cir. 2008).

Hudson argues that under any analysis, exercising jurisdiction here will not settle the controversy between the parties because the Underlying Litigation contains numerous factual disputes that must be resolved before this Court can make its determination. [Doc. 18 at 7]. In essence, because the Underlying Litigation includes negligence claims, Hudson maintains that the existence of "property damage," as defined under the Policy, will ultimately depend on specific

factual findings, including the nature of the harm to the properties and who is responsible for that harm. [*Id.*]. Without such findings, Hudson argues, this Court could only give "advisory opinions based on differing sets of potential factual outcomes." [*Id.*]. Conversely, Westfield argues that the only issue before this court is the question of coverage since Westfield is not a party in the Underlying Litigation. [Doc. 20 at 8]. In its view, an exercise of jurisdiction here would settle the coverage controversy between Hudson and Westfield. [*Id.*].

Ultimately, a declaration of coverage or non-coverage at this point in the litigation would do little to resolve the discrete controversy between the parties, nor would it resolve the controversy in the Underlying Litigation. As it stands, the state court in the Underlying Litigation will have to make its own findings with respect to a multitude of factual issues regarding Hudson's purported negligence and the damage it allegedly caused.[2] If this Court was to hold, for instance, that Westfield was not obligated to indemnify Hudson, that would necessitate a finding that no "property damage," as defined under the Policy, occurred. However, to make such a finding, the Court would need to "inquire into matters being developed through state court discovery," such as the type of damages that occurred, who caused the damages, and whether Hudson is ultimately liable for those damages. *Scottsdale*, 513 F.3d at 556. These are factual findings that the state court in the Underlying Litigation will ultimately resolve. *See Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 813–814 (6th Cir. 2004) (holding that a declaratory judgment would not resolve

---

[2] In the Underlying Litigation, the defendants have filed a negligence claim against Hudson alleging that Hudson, or its subcontractors, damaged the project by "failing to construct the Project free of defects, failing to construct the Project in accordance with the Project plans and design criteria, failing to keep the Project site free of water intrusion, failing to properly staff the Project and/or manage its employees, approving of, and paying for, work that had not been performed and/or was defectively performed by Hudson's sub-subcontractors, failing to monitor its sub-subcontractors and account for Project materials, and otherwise ignoring Project requirements." [Doc. 20 at 7].

the insurance coverage controversy because it rested on a fact-based question of state law to be resolved in the underlying negligence action); *White Pine Ins. Co. v. McIntosh*, No. 5:21-238-KKC, 2022 U.S. Dist. LEXIS 118416, at *16–17 (E.D. Kent. July 6, 2022) ("To determine whether there is indemnity for Rutherford's claims of negligence and intentional assault, the Court may have to resolve the same factual issues that go to the merits of those state court claims—factual questions such as what Williams actually did or did not do, Williams's employment status, whether Williams has a history of acting violently or aggressively, and if so, whether Non-Stop had knowledge of that history."); *Allmerica Fin. Benefit Ins. Co. v. Eagle Sales Co.*, No. 2:17-cv-025450JPM-cgc, 2020 U.S. Dist. LEXIS 257750, at *20 (W.D. Tenn. Jan. 14, 2020) (finding that the first factor weighed in favor of exercising jurisdiction because the DJA did not require the court to settle factual disputes regarding the underlying tort case in order to settle the controversy).

Westfield disagrees, arguing that this Court "will not have to wait for factual resolution of whether Hudson's work was negligent, because Tennessee law makes it clear that claims that the insured negligently performed its work, standing alone, are not covered by general liability policies." [Doc. 20 at 8]. In support of its position, Westfield primarily relies on the facts alleged in the defendant's counterclaims in the Underlying Litigation, which it contends demonstrates that Hudson's conduct amounted to nothing more than a failure to meet its contractual obligations. [*Id.* at 7–8]. As such, Westfield asserts the claims sound solely in breach of contract rather than negligence and therefore do not implicate "property damage" as defined under the Policy and Tennessee law. [*Id.*]; *see Blaylock & Brown Constr., Inc. v. AIU Ins. Co.*, 796 S.W.2d 146, 153 (Tenn. Ct. App. 1990) (finding that "property damage" in an insurance contract covers tort liability and not contractual liability).

However, Westfield's argument fails for two reasons. First, Tennessee law recognizes that

while the "duty to defend depends only *upon the facts as alleged* to be, the duty to indemnify, i.e., ultimate liability, depends rather *upon the true facts*." *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994) (emphasis added). Whether the Policy here ultimately requires indemnification is necessarily based upon factual issues to be decided in the Underlying Litigation, not merely the factual allegations alleged. *See Columbia Nat'l Ins. Co. v. JR Livingston Constr.*, LLC, No. 3:14-cv-01781, 2016 U.S. Dist. LEXIS 41499, at *11–12 (M.D. Tenn. Mar. 28, 2016) (concluding that the resolution of the issue of indemnification would be premature before factual findings from the state court); *Founders Ins. Co. v. Bentley Entm't*, LLC, No. 3:12-cv-01315, 2013 U.S. Dist. LEXIS 100778, *27–28 (M.D. Tenn. July 17, 2013) ("To grant the summary judgment motion of either the plaintiff or the defendants would require resolution of the issue of whether McNulty committed a negligent act. Such a determination would be inappropriate in a declaratory judgment action at this time."). Second, Westfield's argument relies on its own assessment of the scope and viability of the underlying negligence counterclaims. This Court's role is not to preemptively evaluate the facts alleged and whether those claims will ultimately succeed or fail. Rather, what type of negligence Hudson committed and whether the evidence in the Underlying Litigation ultimately supports a finding of it is a determination more appropriately suited for the underlying state court to make. Moreover, the factual record in the Underlying Litigation may continue to develop and change through discovery and trial. Therefore, because any determination by this Court at this stage would be necessarily speculative, a declaration in this action would be largely duplicative and would not "settle the controversy." *Travelers Indem. Co.*, 495 F.3d at 271.

As to the second *Grand Trunk* factor, a declaration here would also not meaningfully clarify the legal relations between all the parties involved in both this action and the Underlying Litigation. Until the state court in the Underlying Litigation resolves the factual disputes before it,

any declaration by this Court would amount to nothing more than an advisory opinion based on a range of potential outcomes. Moreover, because Hudson and Westfield's coverage dispute is not at issue in the Underlying Litigation, it would not settle the controversy as to all the parties.

Accordingly, the Court finds that the first and second factors weigh against exercising jurisdiction.

### B. Factor Three: Is this Action Being Brought for Procedural Fencing Purposes?

According to the Sixth Circuit, a district court should not "impute an improper motive to a plaintiff where there is no evidence of such in the record." *Scottsdale Ins. Co.*, 513 F.3d at 558 (internal citation omitted). Here, Hudson agrees that there is no evidence of an improper motive in the record. [Doc. 18 at 8]. Therefore, this third factor is neutral in the absence of facts demonstrating improper motive. *Travelers Indem. Co.*, 495 F.3d at 272.

### C. Factor Four: Will the Declaratory Action Increase Friction Between State and Federal Courts?

In the Sixth Circuit, district courts consider these three sub-factors when analyzing potential friction between state and federal courts in declaratory actions: "(1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between the underlying factual and legal issues and state law, or whether the federal common law or statutory law dictates a resolution of the declaratory action." *Liberty Mut. Fire Ins. Co. v. Bohms*, 490 Fed. Appx. 721, 726 (6th Cir. 2012).

As to the first two sub-factors, resolving the rights and obligations of the parties in this case would require this Court to make a host of factual findings, such as Hudson's contractual obligations to the Project, the extent and type of damages it caused, whether any damage was caused by Hudson's subcontractors, and whether any other property was damaged. Surely the state

trial court that is familiar with the underlying case is in a better position to evaluate factual issues related to coverage or non-coverage under an insurance contract than an unrelated federal district court. *Id.* Any finding made by this Court on the coverage issue would be premature and could lead to inconsistent findings with the underlying state court. Finally, unlike the first two sub-factors, the third weighs against declining jurisdiction because the underlying state court, which has not been presented with the coverage issue, is analyzing the contractual, statutory, and tort claims under Texas law. Conversely, this Court is asked to apply Tennessee law to the coverage issues. Accordingly, the Court finds that on balance the fourth factor weighs in favor of declining to exercise jurisdiction

### D. Factor Five: Is there a more effective alternative remedy?

"A district court should 'deny declaratory relief if an alternative remedy is better or more effective.'" *Scottsdale Ins. Co.*, 513 F.3d at 562 (quoting *Grand Trunk W.R.R. Co. v. Consol., Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)). Hudson suggests that Tennessee state courts provide a more effective alternative remedy. The Court agrees.

Here, "Tennessee provides a clear and concise avenue for a plaintiff's declaratory judgment action to proceed through Tenn. Code Ann. § 29-14-101 [et seq.] and Tenn. R. Civ. P. 57." *Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 Fed. Appx. 431, 441 (6th Cir. 2018). And, while it is true that federal courts sitting in diversity routinely apply state contract law, Tennessee courts are in a "superior position" to resolve questions of Tennessee contract law. *Id.; Travelers Indem. Co. of Am. v. Moore & Assocs.*, 216 S.W.3d 302, 305–311 (Tenn. 2007) (including an extensive discussion and analysis on the meaning of contractual terms, such as "property damage" and "occurrence," under Tennessee law). A resolution of this case would necessitate a complex analysis of how Tennessee law defines certain contractual terms under an insurance policy.

9
Case 1:25-cv-00184-CEA-CHS    Document 22    Filed 01/06/26    Page 9 of 10    PageID #: 1733

Accordingly, the Court finds that the fifth factor also weighs in favor of declining to exercise jurisdiction.

On balance, the *Grand Trunk* factors weigh in favor of discretionarily declining to exercise jurisdiction over this matter. Accordingly, Defendant's Motion to Dismiss will be **GRANTED**. Hudson's motion [Doc. 17] also requested, in the alternative, that the Court stay this matter pending resolution of the Underlying Litigation. Because this case will be dismissed, it is not necessary for the Court to decide whether such relief is appropriate.

### III.    CONCLUSION

For the reasons explained above, Defendant's Motion to Dismiss [Doc. 17] is **GRANTED**. The Court will decline to exercise jurisdiction over this action. Accordingly, this action is **DISMISSED WITHOUT PREJUDICE**. A separate judgment will enter.

**SO ORDERED.**

/s/ *Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY JR.**
**UNITED STATES DISTRICT JUDGE**